CARL M. O'DONNELL and ROBERTA M. O'DONNELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
O'Donnell v. Commissioner
Docket No. 27563-82.
United States Tax Court
T.C. Memo 1986-14; 1986 Tax Ct. Memo LEXIS 593; 51 T.C.M. (CCH) 266; T.C.M. (RIA) 86014; January 13, 1986. *593 Held: Personal service income assigned by petitioners to an "Express Equity Pure Trust" constitutes income to petitioners. Held further, petitioners are not entitled to depreciation and business expense deductions for an automobile leased to the trust. Held further, petitioners are liable for an addition to tax pursuant to section 6653(a). Carl M. O'Donnell, pro se. Christine Colley, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in petitioners' 1978 Federal income tax in the amount of $2,949, together with an addition to tax of $147.45 pursuant to section 6653(a). [1] The issues presented for decision are: (1) Whether personal service income assigned by petitioners to an "Express Equity Pure Trust" is *594 taxable to petitioners individually; (2) whether petitioners are entitled to depreciation and business expense deductions for an automobile leased to the trust; and (3) whether petitioners are liable for an addition to tax under section 6653(a). Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. For convenience, our Findings of Fact and Opinion are combined. At the time of filing their petition in this case, petitioners resided in Bedford, Massachusetts. On September 6, 1975 petitioners Carl M. O'Donnell (O'Donnell) and Roberta M. O'Donnell (Mrs. O'Donnell) signed a "Declaration of Trust" purporting to create the Carl M. O'Donnell Equity Trust (Trust). The Declaration of Trust designated O'Donnell as the grantor-creator and Mrs. O'Donnell and Carl Harmon (Harmon) as trustees of the Trust. The "Trustee's Declaration of Purpose" used the following now familiar language: THE DECLARED *595 PURPOSE OF THE TRUSTEES OF THIS TRUST shall be to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, conveyed by THE CREATOR HEREOF AND GRANTOR HERETO to be the corpus of THIS TRUST. Included therein is the exclusive use of his lifetime services and All of his EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, so that Carl M. O'Donnell can maximize his lifetime efforts through the utilization of his Constitutional Rights; for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare, all of which Carl M. O'Donnell feels he will achieve because they are sustained by his RELIGIOUS BELIEFS. To facilitate the consolidation of their assets in the Trust, Mrs. O'Donnell executed a quit-claim deed to O'Donnell on September 6, 1975. The deed granted to O'Donnell a parcel of land located in Portland, Maine together with all buildings and improvements thereon. The deed also purported to convey "certain of Roberta M. O'Donnell other real and personal properties, included therein are her dower, homestead or other marital *596 rights, if any, to be conveyed simultaneously with this conveyance." On September 8, 1975 O'Donnell executed a quit-claim deed to Mrs. O'Donnell and Harmon as trustees for the Trust. The deed granted to the trustees the parcel of land located in Portland, Maine, together with all buildings and improvements located thereon. The deed also purported to convey "all dower, homestead or other marital rights, if any" possessed by O'Donnell. Thus, in conjunction with Mrs. O'Donnell's deed of September 6, all of petitioners' interests in the Portland, Maine parcel, together with their dower, homestead, or other marital rights, were transferred to the Trust. On October 6, 1977 O'Donnell leased to the Trust a 1977 Chevrolet automobile. The lease agreement was on a preprinted form bearing the logo of Educational Scientific Publishers. The lease provided for payment by the Trust as lessee to O'Donnell as lessor of $1.00, plus a monthly rental sufficient to retire any outstanding lien against the vehicle. The lease further provided that the Trust was liable as lessee for the titling, registration, licensing, insurance, oil, gas, taxes, penalties, fines, and maintenance expenses associated *597 with operation of the vehicle. Petitioners' 1978 Federal income tax return included W-2 forms issued to petitioners in the amount of $22,441. Petitioners deducted a net loss of $977 from the rental of the automobile. Additionally, petitioners deducted a "nominee payment" to the O'Donnell Trust of $22,441. The nominee payment was reduced, however, by a "consulting" fee of $8,162, ostensibly representing compensation paid by the trust to petitioners. Thus, petitioners' net deduction for nominee payments was $14,279. After these adjustments, petitioners reported taxable income of $7,185. Petitioners filed a Fiduciary Income Tax Return on behalf of the Trust for the taxable year 1978. Petitioners included $22,441 in the Trust's income under the designation "Contract/Nominee Income." This amount exactly equaled the $22,441 shown on petitioners' W-2 forms and included on their joint return. Petitioners' then deducted $22,341 from the Trust's income for housing, utilities, medical and dental expenses, auto leasing expenses, consulting fees, and assorted maintenance and supply expenses. The remaining $100 of income was claimed as an exemption for filing a final return. The first *598 issue for decision is whether the personal service income transferred to the Trust is taxable to the Trust or to petitioners. Petitioners have the burden of proving that the deficiencies determined by respondent are incorrect. ; Rule 142(a). Respondent contends that petitioners' assignment of income does not operate to shift the incidence of taxation from them to the Trust. In view of the long series of cases concerning similar family trust arrangements, all of which have held such assignments of income to be ineffective, there is no doubt that respondent is correct. , affg. ; , affg. ; ; . It is an elementary principle of our tax system that individuals cannot escape taxation by diverting income to some other entity through contractual arrangements. ; *599 . Accordingly, the amounts shown on petitioners' individual tax returns for 1978 as nominee payments to the Trust are treated as income to petitioners. We recognize that in a typical family trust arrangement, the taxpayer's income is transferred directly to the trust by the taxpayer's employer. In this instance, however, petitioners included their wages in their personal income and attempted to deduct the income assigned to the Trust as a "nominee payment." In , the Eleventh Circuit affirmed a partial summary judgment by this Court against O'Donnell's brother in a case involving a family trust virtually indistinguishable from the one before us. As in O'Donnell, we find (1) that petitioners received the money paid into the Trust, and (2) that the Trust had no charitable attributes or any other attributes that might give rise to a deduction. Thus, there is no validity to petitioners' claimed deduction for nominee payments made to the Trust. We must next decide whether petitioners are entitled to depreciation and business expense deductions for an automobile *600 leased to the Trust. Petitioners have presented no evidence other than the lease agreement supporting these deductions. We agree with respondent that petitioners have failed to demonstrate that their activities constituted a trade or business or that the automobile was held by petitioners for the production of income. Though leased to the Trust, the automobile was used by petitioners. As such, its maintenance constitutes a nondeductible personal living expense pursuant to section 262.Thus, respondent's elimination of rental income and disallowance of rental expense deducations is sustained. Finally, we must decide whether petitioners are liable for an addition to tax under section 6653(a). Section 6653(a) provides for an addition to tax of 5 percent of the underpayment "[i]f any part of any underpayment * * * of any [income] tax * * * is due to negligence or intentional disregard of rules and regulations." Petitioners have the burden of proving that the addition to tax determined by respondent in the notice of deficiency does not apply. ; Rule 142(a). The imposition of additions to tax for negligence has been *601 upheld time and again in cases involving the use of family trusts. E.g., ;; Petitioners knew, or should have known if they had sought independent tax advice, that they could not avoid taxation by assigning income and property to this type of family trust. We have previously mentioned several cases holding assignments of income to such trusts ineffective and holding individuals liable under the grantor trust provisions. A number of cases have also held similar family trust arrangements to be mere shams devoid of economic reality. See, e.g., ; ; . Petitioners contend that they established the Trust based on information provided by the attorney promoting the Trust. This information included a prospectus published by Educational Scientific Publishers which petitioners submitted as their brief. As in previous cases, we find it appropriate here to *602 reiterate what we said in : In our view, a prudent individual would have endeavored to obtain independent legal and tax advice before attempting to make such an all-encompassing (though ineffective) disposition of all of his or her assets, including, as here, the very means of livelihood. To anyone (and we would include petitioners) not incorrigible addicted to the "free lunch" philosophy of life, the entire scheme had to have been seen as a wholly transparent sham. * * * Accordingly, we hold that petitioners are liable for the addition to tax under section 6653(a) as determined by respondent in the notice of deficiency. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩